**STATE of Missouri, Respondent,**

v.

**John C. BERREY, Appellant.**

**No. WD 42852.**

Missouri Court of Appeals, Western District.

Dec. 4, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 29, 1991.

Application to Transfer Denied March 5, 1991.

**38**

Dennis G. Schafer, Montgomery City, for appellant.

William L. Webster, Atty. Gen., M. Melissa Manda, Asst. Atty. Gen., Jefferson City, for respondent.

Before GAITAN, P.J., and TURNAGE and KENNEDY, JJ.

PER CURIAM:

Defendant appeals from convictions of driving while intoxicated—third offense, Count I, driving while revoked, Count II, and failure to keep right, Count III. §§ 577.010, 302.321, and 304.015.2, RSMo 1986.[1] The matter was tried before a jury, however, defendant was sentenced by the trial court as a repeat alcohol offender to four years imprisonment on Count I, 30 days on Count II, and a one dollar fine on Count III. § 577.023.12. On appeal, defendant claims three points of error: (1) the trial court allowed evidence of defendant's refusal to take a chemical test when the officer failed to inform him that evidence of the refusal could be used against him; (2) Count II of the information fails to properly charge driving while revoked because it does not allege that defendant had the requisite mental state; and (3) there was insufficient evidence to support the jury's verdict as to driving while revoked.

On March 11, 1989, at approximately 2:35 a.m. Sergeant Phillip M. Herbert of the Fulton, Missouri city police department was northbound on Business 54 near Route Z in the city of Fulton. The officer saw a silver colored car make a wide right turn out of a convenience store, crossing into the wrong lane. The officer followed the car, which weaved into the wrong lane twice more before the officer pulled it over.

The defendant was driving the car. The officer asked to see the defendant's driver's license, which he did not produce. Instead, the passenger gave the officer defendant's I.D. card which was on the dashboard. The defendant then failed several simple sobriety tests. The officer testified that he could smell the odor of intoxicating beverages on the defendant, and that the

---

**1.** All references to the Revised Statutes of Missouri are to RSMo 1986, unless otherwise indi- cated.

defendant's speech was slurred, his eyes were watery, and he was unsteady on his feet. In the officer's opinion, the defendant was intoxicated.

The defendant was arrested, and the officer read him his *Miranda* rights. At the police station, the defendant read his rights out loud to the officer, and signed a waiver form. He answered several questions, and told the officer that he had "about five" beers during the course of the evening. After further observation, the officer asked the defendant to submit to a blood-alcohol test.

Specifically, the officer said, "Under the laws of the State of Missouri, if a police officer stops you, believes that you've been driving while intoxicated and places you under arrest and requests that you take a chemical test to determine your blood-alcohol concentration, if you refuse to take the test, your license can be suspended for one year." The defendant refused. One of the jailers came up to the holding room, and the officer repeated the warning, and the defendant again refused. It was then that the officer informed the defendant that his refusal could be used against him, and that the officer planned to give the defendant a blood test anyway, since a felony had been committed.[2] The defendant called his attorney, and once again refused any chemical test. The officer also spoke with the attorney, who told him that the defendant was refusing to take a breath test.

Apparently, the entirety of the defendant's driving record was admitted into evidence. However, only a portion of it was actually read to the jury. The part read was, "On 5/4/87 the defendant's license was revoked and the defendant's license has not been reinstated."

The judgment is affirmed.

Defendant's first point claims that the trial court erred by allowing evidence of his refusal to submit to a chemical sobriety test. § 577.041, RSMo Supp.1987 states:

If a person under arrest refuses upon the request of the arresting officer to submit to any test allowed under section 577.-020, then none shall be given and evidence of the refusal shall be admissible in a proceeding under section 577.010 or 577.012. *The request of the arresting officer* shall include the reasons of the officer for requesting the person to submit to a test and also *shall inform the person that evidence of his refusal to take the test may be used against him* and that his license may be revoked upon his refusal to take the test.

(emphasis added). The United States Supreme Court made it clear in *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), the admission in evidence of a defendant's refusal to submit to a blood-alcohol test does not offend any constitutional protections. Therefore, the necessity of informing the accused that his refusal to take any blood-alcohol test may be used against him arises only by reason of the statute. *Barnhart v. McNeill*, 775 S.W.2d 259, 261 (Mo.App.1989). The statute contains no suggestion that if an officer fails to inform him that evidence of the refusal may be used, then all evidence of the refusal must be excluded.

It is clear that the officer failed to inform defendant when he made his first two requests. However, defendant was then informed that the refusal could be used against him, and was allowed to call his attorney. Sgt. Herbert then spoke with defendant's counsel on the phone, and counsel asked him to, "take note of the fact that [defendant] was refusing to take a breath test." Even though there was not a third request to take a breath test, the repeated and emphatic refusal, after defendant had been informed of the consequences of his refusal, is sufficient to show that the requirement of § 577.041 has been met.

Defendant's second and third points deal with whether or not driving while a license is revoked, § 302.321, RSMo 1986, requires any particular mental state as an essential element. In general terms, § 302.321 states that any person whose license has been revoked and who drives any motor vehicle upon the highways of this state while such license is revoked and before

2. The results of this blood test were not introduced, by stipulation of the parties.

official reinstatement notice is issued is guilty of a class A misdemeanor. Within the terms of the statute, no culpable mental state is defined or required. For the purposes of these two points, we assume, without deciding, that § 302.321 contains an element of intent.[3]

■ The defendant's second point argues that the information charging driving while revoked was fatally defective because there was no allegation that defendant knew of the revocation or acted recklessly with regard to whether his license was revoked. The information precisely followed MACH–CR3d 32.48 which does not require any allegation of intent. By the same token, the information also tracked the language of the statute itself, § 302.321, which does not, on its face, require any type of intent.

In *State v. Granger*, 199 S.W.2d 896, 898–99 (Mo.App.1947), the court held that when a statute does not contain an element of intent, the information is sufficient if it alleges the act constituting the crime in the language of the statute without including an allegation of intent. So in this case the element of intent is not included in the statute, thus it was not necessary to include in the information that the defendant intended to drive his automobile while his driver's license was revoked. Assuming without deciding that an element of intent is required by § 302.321, the information was not fatally defective; the second point is without merit.

■ As his final point, defendant alleges that the evidence was insufficient to support the conviction of driving while revoked, because no evidence was presented that the defendant knew his driver's license was revoked. The jury was instructed that it must find that at the time defendant was driving he knew his license was revoked.

The evidence indicated that the defendant failed to produce his driver's license when he was stopped, and in fact his passenger produced only defendant's Missouri identification card. Further, a portion of the defendant's driver's record was read into evidence, and it indicated that his license had been revoked on May 4, 1987, and had not ever been reinstated. Even if an element of intent is implied by § 302.321, the fact that defendant did not have a license combined with the fact that the license had not been reinstated was sufficient to allow the jury to infer that the defendant knew that his license was revoked. The third point is denied.

The judgment of conviction is affirmed.

---

**3.** In *State v. Davis*, 779 S.W.2d 244, 246 (Mo. banc 1989), the Supreme Court had an opportunity to address the issue, but stated, "[While] § 302.321 does not, on its face, require a culpable mental state, nor has this Court held that one is required[,] it is not necessary for the Court to address this issue because the defendant admitted that he had surrendered his license". In *State v. Horst*, 729 S.W.2d 30, 31 (Mo.App.1987), the Eastern District specifically held that culpable mental state is an essential element of § 302.321. The Southern District agreed in its recent opinion, *State v. Counts*, 783 S.W.2d 181, 182 (Mo.App.1990), which found that the provisions of the Criminal Code govern the construction of § 302.321. This court has yet to address the issue headlong, although we have implied the requirement of intent in a decision dealing with the admissability of a defendant's driving record. *City of Kansas City v. Johnston*, 778 S.W.2d 321, 323 (Mo.App.1989).