**960**

Timothy McGUIRE, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent

No. 86SC280.

Supreme Court of Colorado,
En Banc.

Feb. 8, 1988.

The Office of Harry J. Holmes, Hal D. Blacker, Longmont, for petitioner.

Alexander M. Hunter, Dist. Atty., John Pickering, Deputy Dist. Atty., Boulder, for respondent.

LOHR, Justice.

As a result of a jury trial in Boulder County Court, the petitioner was convicted of driving a motor vehicle while under the influence of intoxicating liquor. *See* § 42–4–1202(1)(a), 17 C.R.S. (1984). He appealed, asserting as one ground for reversal that the trial court had violated his rights to due process of law by admitting evidence of his refusal to take a roadside sobriety test. The district court affirmed the conviction, and we granted certiorari. We conclude that the admission of the challenged evidence was consistent with the petitioner's rights to due process of law as guaranteed by the United States and Colorado Constitutions. We therefore affirm the judgment of the district court.

I.

On April 4, 1985, an officer of the Boulder County Sheriff's Department stopped an automobile driven by the petitioner, Timothy McGuire, for speeding and weaving. The officer formed the opinion that McGuire had been driving under the influence of intoxicating liquor, and asked him to perform certain roadside sobriety maneuvers. The officer testified:

> I told him that, should he do the maneuvers, they could be used against him in court and that they were voluntary, which means he did not have to do them; and that's it.

The officer did not advise the petitioner regarding any consequences of refusal to take the roadside tests. The petitioner declined to perform the tests, whereupon the officer placed him under arrest.

McGuire was charged with driving a motor vehicle while under the influence of intoxicating liquor, § 42–4–1202(1)(a), 17 C.R.S. (1984), and was convicted of that charge after a jury trial in Boulder County Court. During the course of the trial, evidence of the petitioner's refusal to perform the roadside sobriety tests was admitted into evidence over his objection. McGuire appealed to the District Court for Boulder County, asserting as one ground for reversal that the admission into evidence of his refusal to perform the roadside sobriety maneuvers violated his rights to due process of law. The district court affirmed, and we granted certiorari to determine whether the petitioner's due process rights under the federal and state constitutions

were violated by the admission of the challenged evidence.[1]

## II.

The rights of a defendant to due process of law in criminal proceedings in Colorado are safeguarded by the fourteenth amendment to the United States Constitution, *Colorado v. Connelly,* —— U.S. ——, 107 S.Ct. 515, 519–20, 93 L.Ed.2d 473 (1986), and by Article II, Section 25, of the Colorado Constitution. Due process guarantees that a criminal defendant will be treated with "that fundamental fairness essential to the very concept of justice." *United States v. Valenzuela–Bernal,* 458 U.S. 858, 872, 102 S.Ct. 3440, 3449, 73 L.Ed.2d 1193 (1982) (quoting *Lisbena v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 289, 86 L.Ed. 166 (1941)). *Accord California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984). However, not every trial error or infirmity constitutes a failure of fundamental fairness. *Donnelly v. DeChristoforo,* 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). "[T]he acts complained of must be of such quality as necessarily prevents a fair trial." *Valenzuela–Bernal,* 458 U.S. at 872, 102 S.Ct. at 3449 (quoting *Lisbena,* 314 U.S. at 236, 62 S.Ct. at 289).

Recently, in *Cox v. People,* 735 P.2d 153 (Colo.1987), we addressed the question of whether due process under the Colorado Constitution was violated in a prosecution for driving under the influence of intoxicating liquor by admitting into evidence a driver's refusal to submit to a blood or breath alcohol test. In *Cox,* we consolidated for review two separate district court judgments, both involving drivers stopped by law enforcement officers. In each case the officer had warned the defendant that his refusal to submit to a blood or breath test would result in the revocation of his driver's license, a consequence prescribed by statute. *See* § 42–4–1202(3)(d), 17 C.R.S. (1984). In neither case did the officer advise the defendant that his refusal to take the test could be used against him at trial, as also specifically provided by statute. *See* § 42–4–1202(3)(e), 17 C.R.S. (1984). Each defendant contended that the admission of his refusal into evidence violated his rights to due process of law under Article II, Section 25, of the Colorado Constitution. We held that the "[f]ailure to warn a driver that evidence of his refusal to take a blood or breath test may be used against him at trial coupled with the subsequent use of the evidence at trial does not violate due process under either the federal or state constitution." *Cox,* 735 P.2d at 157.

In *Cox* we relied on the reasoning of the United States Supreme Court in *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). In *Neville,* the arresting officers warned the defendant driver that the failure to take a blood-alcohol test could result in revocation of his license, but did not inform the defendant of the further consequence that evidence of refusal would be admissible against him at a trial on the charge of driving while intoxicated.[2] The Court, however, stated that it was unrealistic to say that the warning given to the suspect implicitly assured him

---

1. The petitioner's challenge to the admissibility of this evidence is limited to due process grounds. We have previously held that the privilege against self-incrimination does not extend to the results obtained from a roadside sobriety test, with the consequence that the warnings prescribed by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), need not precede a request for performance of such a test. *People v. Ramirez,* 199 Colo. 367, 609 P.2d 616 (1980). Later, using a somewhat different analysis, the United States Supreme Court reached that same conclusion. *South Dakota v. Neville,* 459 U.S. 553, 558–64 and 564 n. 15, 103 S.Ct. 916, 919–23 and 923 n. 15, 74 L.Ed.2d 748 (1983).

We have also held that a roadside sobriety test is a search in the constitutional sense and must be supported by probable cause to believe that a person has been driving under the influence of, or while his ability was impaired by, intoxicating liquor or other drug. *People v. Carlson,* 677 P.2d 310, 316–18 (Colo.1984). In the present case, the petitioner concedes that probable cause existed to request the roadside sobriety test.

2. The officers in *Neville* did not specifically warn the driver that if he should take a blood-alcohol test, the test results could be used against him at trial. *South Dakota v. Neville,* 459 U.S. at 565, 103 S.Ct. at 923.

that no adverse consequences other than those mentioned by the officers would result if he refused to take the test. *Id.* at 566, 103 S.Ct. at 924. Rather, "the warning that he could lose his driver's license made it clear that refusing the test was not a 'safe harbor,' free of adverse consequences." *Id.* The Court accordingly held that admission into evidence of the refusal to submit to the blood-alcohol test would comport with fundamental fairness as required by due process. *Id.*

Unlike the defendants in *Cox* and *Neville,* the petitioner in the present case received no warning of any adverse consequences that might result from his refusal to perform the roadside maneuvers. Therefore, the reasoning of *Neville,* relied on in *Cox,* does not resolve the due process issue in the case now before us. Nothing in the officer's statement specifically informed the petitioner that refusal to perform the roadside maneuvers was not a "safe harbor."

The petitioner argues that, under the logic of *Neville,* the lack of any warning of adverse consequences that could result from the refusal to perform the roadside maneuvers, coupled with the admission of the refusal into evidence, violated his due process rights. We addressed a somewhat similar contention in the context of a proceeding for judicial review of a driver's license revocation in *Brewer v. Motor Vehicle Div., Dep't of Revenue,* 720 P.2d 564 (Colo.1986). In *Brewer* the plaintiff's driver's license was revoked in an administrative proceeding based upon a breath test showing a blood-alcohol content in excess of the statutory threshold for driver's license revocation. *See* § 42–2–122.1, 17 C.R.S. (1984). In the judicial review proceeding, he contended that he had not been sufficiently advised before the breath sample was taken because "he was not advised that he had the option to submit to a blood test or to refuse chemical testing altogether, nor was he warned of the legal consequences of such a refusal." *Brewer,* 720 P.2d at 568. We held that the driver had no constitutional or statutory right to refuse testing or to select a particular type of test. *Id.* at 568–69.

The driver in *Brewer* also argued that he had a due process right to be warned that his refusal of chemical testing could be used against him at trial on a charge of driving under the influence of, or while impaired by, intoxicating liquor and that such refusal could also result in the revocation of his driver's license. *See* § 42–4–1202(3)(e), 17 C.R.S. (1984); § 42–2–122.1(1)(a)(II), 17 C.R.S. (1984). We held, however, that due process was satisfied through the publication of sections 42–4–1202(3)(e) and 42–2–122.1(1)(a)(II), which specifically describe these adverse consequences of refusal to submit to chemical testing. *Brewer,* 720 P.2d at 569–70. Relying on *Vigil v. Motor Vehicle Div. of Dep't of Revenue,* 184 Colo. 142, 145, 519 P.2d 332, 334 (1974), we reasoned that a person licensed to operate a motor vehicle on public highways is presumed to know the law regarding the use of such highways. *Brewer,* 720 P.2d at 564. Under *Brewer,* therefore, warnings are not necessary when some other form of notice exists to alert a driver to the adverse consequences of a refusal. *Brewer* differs from the present case, however, because no comparable statutory provision exists governing the admissibility of a refusal to perform roadside maneuvers.

The crucial inquiry on which this case must turn is whether the fact that the officer did not advise McGuire that his refusal to perform roadside sobriety maneuvers could be admitted in evidence against him at trial, while advising him that the results of any such test would be admissible, was so fundamentally unfair as to deprive the petitioner of a fair trial. *See United States v. Valenzuela–Bernal,* 458 U.S. at 872, 102 S.Ct. at 3449. We hold that these circumstances did not result in fundamental unfairness to the petitioner. First, McGuire does not assert that he had a constitutional right to decline to perform roadside sobriety maneuvers, conceding, as he does, that the arresting officer had probable cause to believe that he had been driving under the influence of intoxicating liquor. *See People v. Carlson,* 677 P.2d 310, 316–18 (Colo.1984) (roadside sobriety

test is a search and must be supported by probable cause to believe that the driver has been driving while under the influence of or impaired by intoxicating liquor or other chemical substance).[3] There is no statute conferring such a right upon a driver in McGuire's circumstances. Therefore, this case does not present a situation in which the evidentiary use of the driver's refusal to perform the roadside tests might impermissibly burden a constitutional or statutory right. *See South Dakota v. Neville*, 459 U.S. at 565, 103 S.Ct. at 923. *Compare* the present case *with Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) (*Miranda* advisement, including right to remain silent, implicitly assures suspect that silence cannot be used against him; therefore, a prosecutor cannot seek to impeach a defendant's testimony at trial by cross examining him about his failure at the time of arrest to have told the arresting officer the same story related in the defendant's later testimony at trial).

Moreover, the officer did not affirmatively mislead the petitioner by stating that no negative consequences would attach to a refusal to perform the requested maneuvers. The petitioner contends, however, relying on *South Dakota v. Neville*, that by telling him of the fact that the results of such tests could be used against him in court and by going on to say that the petitioner did not have to perform the tests, the officer implicitly assured the petitioner that refusal to perform the maneuvers would be a safe harbor. We believe this extends the import of the officer's words beyond their natural meaning. The more likely understanding from the officer's advisement would have been that the effect of refusal to undergo roadside sobriety maneuvers was a subject not covered by the advisement explicitly or implicitly.[4] Roadside sobriety tests by their inherent nature cannot be performed without the cooperation of the subject, and the officer's advisement that McGuire did not have to do them could also be understood as nothing more than an acknowledgment of that fact.

We do not believe that fundamental fairness requires that officers inform suspects of the evidentiary effect of a decision whether to perform roadside sobriety maneuvers when constitutional rights or statutory consequences are not implicated by the choice. Such an advisement might prove no simple task. Evidentiary questions, after all, must be resolved at trial, taking into account the context in which they arise and the purpose for which the evidence is offered. Whatever might be the merits of an advisement as to the evidentiary effect of declining to take a blood-alcohol test, we conclude that under the totality of the circumstances the absence of that advisement in this case was not an omission "of such quality as necessarily [prevented] a fair trial." *See Valenzuela–Bernal*, 458 U.S. at 872, 102 S.Ct. at 3449.

We affirm the judgment of the district court.

---

3. This case does not present the issue of whether evidence of a driver's refusal to perform roadside sobriety maneuvers would be admissible in evidence at trial for an alcohol-related driving offense under circumstances in which there was no probable cause to believe that the driver was under the influence of or impaired by intoxicating liquor at the time the maneuvers were requested. We therefore express no opinion on that question.

4. This is not a situation in which vigilance is necessary to assure that an officer does not subtly coerce a suspect into declining to take a roadside sobriety test. As the United States Supreme Court recognized with respect to an analogous request for a blood-alcohol test in *South Dakota v. Neville*, "the State wants [the suspect] to choose to take the test, for the inference of intoxication arising from a blood-alcohol test is far stronger than that arising from a refusal to take the test." *Id.* at 564, 103 S.Ct. at 922.